Telia U. Williams, Esq.
Nevada Bar No. 9359
LAW OFFICE OF TELIA U. WILLIAMS
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145
Tel: (702) 835-6866
telia@telialaw.com

*Attorney for defendants*
*Mark Coburn, Half Price*
*Lawyers LLC, Adam Stokes,*
*and Adam Stokes, LLC*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTINE OWEN, | Case No.: 2:18-cv-01581-GMN-CWH |
| Plaintiff, | |
| vs. | **HPL DEFENDANTS' REPLY TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY** |
| ADAM STOKES, an individual; ADAM STOKES, LLC, a domestic limited liability company; HALF PRICE LAWYERS, LLC, a domestic limited liability company; MARK COBURN, an individual; RAMZY LADAH, an individual, | (ECF NO. 21) |
| Defendants. | |

Defendants Adam Stokes, Adam Stokes, LLC, Half Price Lawyers, LLC, and Mark Coburn, (hereinafter, *collectively*, **"the HPL defendants"**), by and through their undersigned counsel, hereby respond to the Motion to Compel filed by plaintiff Christine Owen (**"Plaintiff"**). *See* ECF No. 21. Though styled as a "Motion for an Order to Compel Demanding Member's Request to Examine and Copy Records of Half Price Lawyers, LLC Pursuant to NRS 86.241," in fact, what Plaintiff seeks from the HPL defendants is discovery. *See generally*, Fed. R. Civ. P. 34. It is indisputable that requests for any materials, attendant to a dispute in a lawsuit (one which Plaintiff filed, by the way, in contravention of a valid arbitration agreement), is a request for discovery.

1

Not only is Plaintiff not entitled to this relief (for reasons that will be briefly outlined herein), the motion itself should be struck. Plaintiff has (again) violated the Federal Rules of Civil Procedure, court rules, and local rules, in filing a pleading in contravention of requirements. Here, Plaintiff has not first met and conferred with the HPL defendants, by way of their counsel, prior to seeking to bring a motion to compel. In fact, undersigned counsel reached out to opposing counsel several times (by telephone and by email) LAST MONTH, asking for an "informal conference" to discuss settlement last month (including a possible offer by a third-party to purchase the business, HPL).[1] Plaintiff, however, after ostensibly agreeing to meet, and agreeing to set a date of May 21, 2019 at 2pm for that meeting, then flatly refused to meet.[2] At no time has Plaintiff ever asked for a meet and confer on this matter, or on any other, throughout this case. Plaintiff further, has rejected <u>all</u> requests by the HPL defendants to meet and confer, on every issue, with the exception of <u>one</u> in November of last year, 2018, prior to the HPL defendants' motion to file under seal, ***which meet and confer Plaintiff had to agree to as it was the only one specifically compelled by this court.***[3]

1.    <u>**Plaintiff Christine Owen Has Not Requested a Meet and Confer**</u>

Federal Rule of Civil Procedure 37 requires parties to seek a "meet and confer" prior to filing a motion for an order compelling discovery. *See* Fed. R. Civ. P. 37(a)(1). Any motion to compel any discovery must include a certification that the movant has in good faith conferred or

---

[1] *See* Exhibit 1.

[2] *See* Exhibits 1 and 2. Undersigned counsel has discussed the matter with her clients, the HPL defendants, and they do not object to this nominal disclosure of an attorney-client privileged communication, which contains no sensitive or confidential information, litigation strategy, or attorney work-product. The HPL defendants do not in any hereby generally waive their right to attorney-client privilege.

[3] *See* Exhibit 3; ECF No. 14, page 3 (Order).

attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. *See id.*

In addition, local rules require a meet and confer prior to submitting the motion that Plaintiff filed in this court. *See* LR 27-7(b). That rules states that discovery motions must include a statement that the movant, after *personal consultation and sincere effort,* tried to resolve the matter without court action. *See id.*[4] There is no way in good faith Plaintiff can make either of these certifications. Plaintiff Christine Owens, a licensed attorney, requested documents and materials *directly of Adam Stokes* in or near April 1, 2019, in contravention of the well-known ethics rule that she should only communicate on matters involving this lawsuit through counsel, as both parties are represented by counsel. Then, HPL defendants' counsel thoughtfully and considerately responded to her request in writing, explaining their position that what she was seeking was discovery, which was not yet ripe to take place in this litigation.[5] Nonetheless, the HPL defendants, by way of their counsel, still provided Ms. Owens one of the documents she

---

[4] *See also, Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev., 1996):

> [T]he court finds no mention of any efforts to comply with Local Rule 27-7(b) with respect to [their] motion. [The movants] state: "Defendants tried to resolve the issue with the Plaintiffs prior to filing this motion."; "[Defendants] have complied with [the] Local Rule…and have made a good faith effort to consult with the Plaintiffs prior to filing the Motion"; and "Defendants have attempted in good faith to resolve the matter without court action, but…it has become necessary for the Defendants to file this Motion." **However, Defendants fail to specify with whom, when, or how the parties attempted to personally and meaningfully discuss the discovery dispute. As explained below, that does not constitute compliance with Local Rule 26-7."**

(*See id.,* emphasis added).

[5] *See* Exhibit 4.

requested.[6]  Plaintiff never responded.  Plaintiff never requested a meeting.  Plaintiff never sought a meet or confer, either in person or by telephone.[7]  Then, when the HPL defendants sought to meet with her to discuss a possible settlement of the case (and to discuss other issues of the case), Plaintiff pretended to agree to meet, then on the day before the scheduled meeting, informed the HPL defendants that she "had no intention of meeting."[8]  Then, without seeking to meet about her discovery requests, Plaintiff brought this motion.  None of Plaintiff's conduct complies with the Federal Rules, this court's local rules, or respectfully, common sense and good faith.

As mentioned above, counsel for the HPL defendants has repeatedly reached out to meet and confer with Plaintiff's counsel with no success (with the exception noted above).[9]  Not only did counsel request an informal meeting to discuss settlement and other issues of the case just last month (which Plaintiff refused), at other times, counsel has requested a "meet and confer" on the case, including before filing the HPL defendants' Motion to Compel Arbitration (which technically is not even required).[10]  Plaintiff's counsel never responded.  *See* Exhibit 6. Undersigned counsel was encouraged that Plaintiff was finally willing to meet and discuss any issue involving this case last month, *outside of a court order*, when she agreed to meet on May 21; but then, just in accord with her ordinary course of conduct in this litigation, she refused to meet or talk—and then, filed this motion.

---

[6] *See id.*
[7] *See* Exhibit 1.
[8] *See id.*
[9] *See e.g.*, also, Exhibit 5 (requesting a meet and confer to which undersigned counsel received no response, see Exhibit 1).
[10] *See* Exhibit 6; ECF No. 18.

There is no reason that Plaintiff should have brought this motion without first meaningfully and sincerely seeking to meet and confer on the issue, as required by the rules.  The HPL defendants' response to her regarding the documents she is seeking—did not foreclose the possibility of a meet and confer.[11]  Plaintiff is again acting in bad faith, as well as, in contravention of the rules, which require a meet and confer before the filing of a motion requesting court action.  Inasmuch as she has failed or refused to do so, her motion, on this point alone, her motion should be denied.

## 2. **Plaintiff's Arbitration Agreement Requires her to Arbitrate, not Obtain Discovery or even Member Materials, in this Litigation While Remand/Motion to Stay or Compel Arbitration is Pending.**

As the HPL defendants have repeatedly, and unreservedly, and faithfully demonstrated at every turn in this case thus far, Christine Owen and Adam Stokes, and Half-Price Lawyers, executed a valid Arbitration Agreement on June 2, 2014.[12]  The defendants have repeatedly produced this agreement, filed provisionally under seal, and included in their various pleadings the language concerning it, which counsel has, at various times authenticated (or attempted to authenticate), and which, tellingly, Ms. Owen has not at any time disputed the existence of.[13]  Specifically, the arbitration agreement binding Ms. Owen holds:

> **Any dispute, controversy or claim**, whether based on contract, tort, statute, or other legal or equitable theory (including any amendments or extensions thereto) <u>arising out of or relating to this Agreement</u> [INCLUDING PLAINTIFF'S MEMBERSHIP IN THE COMPANY], or the breach thereof, **shall be settled by binding arbitration administered**

---

[11] *See* Exhibit 4.

[12] *See* ECF No. 18 (at Exhibit "A")  The HPL defendants had requested that these private contracts, the Operating Agreement and Licensing Agreement (between and among, Adam Stokes, Half Price Lawyers, Mark Coburn, and Christine Owen) remain under seal, which request is still pending.  *See* ECF Nos. 1 and 15.

[13] *See, e.g.,* ECF No. 9, Exhibit "A" (filed provisionally under seal, *see* ECF No. 15); ECF No. 18.

**by the American Arbitration Association ("AAA")** in accordance with its Commercial Arbitration Rules and its Optional Procedures for Large, Complex Commercial Disputes. The arbitration proceedings will be governed by United States Federal Arbitration law and by the AAA rules without reference to state law…[14]

The Party submitting such dispute shall request the AAA to…allow for the parties to **request reasonable production of documents** pursuant to the rules then in effect under the Federal Rules of Civil Procedure (without reference to the local rules of any court). Ms. Owen's deliberate misinterpretation that the above provision allows her to seek "any court of competent jurisdiction" is meritless. In fact, the arbitration agreement only allows a party to seek a court of "competent jurisdiction" to the extent necessary to "protect its Confidential information" (i.e., proprietary information), and attendant "property rights" (i.e., trademark), while a request for arbitration is pending.[15]

Ms. Owens' conclusory allegations to the contrary, it simply is not true that her dispute, including the materials she is now seeking, would not be amenable to arbitration, or that she has any right to seek any court to adjudicate her claims, including her grievance at the company's (Half Price Lawyer's) disagreement in granting her requested documents. She must arbitrate her disputes with the company—not litigate them. Ms. Owen has *never* denied that she signed the Arbitration agreement that the HPL defendants repeatedly and good faith invoke. Nor has Ms. Owen *ever* raised any equitable or legal basis to revoke the Arbitration provision, or the Operating Agreement as a whole.

Instead, Ms. Owen has attempted to argue, in response to the HPL defendants' Motion to Compel Arbitration, that the HPL defendants have "waived" their right to arbitration by, *defending themselves against her in the lawsuit she filed against them*.[16]  Moreover, according to Ms. Owen, the HPL defendants have "waived" their right to arbitrate because they asked the court to seal what they believe is propriety material—the Operating Agreement between Adam Stokes and the

---

[14] *See id.*, pages 22-23 (Emphases added; bracket comments added).
[15] *See* ECF No. 9, Exhibit "A" *id.*, at 23 (emphases added).
[16] *See* ECF No. 19.

6

Plaintiff, and the HPL Licensing Agreement between Adam Stokes and Mark Coburn.[17]  Ms. Owen takes this absurd position despite the fact that *she* initiated the lawsuit!  *But of course, this is untenable.*  There would have been <u>no</u> *need* to file motions to seal from public view what the HPL defendants regard as confidential and/or proprietary information *had* Ms. Owen, a licensed attorney, sought relief in arbitration (a private remedy) rather than filing a lawsuit in a public forum, the state court.  Nothing in the case law or Federal Arbitration Act deems minimally defending oneself in a lawsuit that another party to an arbitration ill-advisedly initiates as "waiving" the right to arbitration.

Plaintiff's arguments in vainly attempting to avoid (or delay) arbitration are so inapt as to be derisive of argument, and are not worthy of being taken seriously.[18]  *For instance,* Plaintiff in part relies on *Dean Witter Reynolds v. Byrd* for the proposition that a party purportedly waives a right to arbitrate if they do not move to compel arbitration immediately.[19]  But this case is inapposite.  In *Dean Witter*, the United States Supreme Court held that the federal district court erred in not requiring the parties to arbitrate where a valid arbitration provision applied, even though some of the complaining party's claims would result in some issues being dealt with in an arbitration, and others, being dealt with in a court.  Chiding the federal district court for failing to simply order the parties to arbitration, the *Dean Witter* court could not have been more unequivocal:

> The Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
>
> **By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to**

---

[17] *See id.*  And again, without seeking this court's permission, she has simply disclosed the entire Agreements on the record, in contravention of this court's order that they be provisionally be filed under seal pending the court's decision on the HPL defendants' motion to seal.  *See* ECF No. 14 and 15.

[18] *See generally,* ECF No. 19, at 3-5.

[19] *See Dean Witter Reynolds v. Byrd*, 470 U.S. 213 (1985); and, ECF No. 19, at 4.

**proceed to arbitration on issues as to which an arbitration agreement has been signed**…

<u>The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation</u>, at least absent a countervailing policy manifested in another federal statute.  By compelling arbitration of state-law claims, a district court successfully protects the contractual rights of the parties and their rights under the Arbitration Act.[20]

The other case that Plaintiff has unjustifiably relied upon is *Van Ness Townhouses v. Mar Industries Corp.*[21]  But *Van Ness* only concerns whether or not a party had *actually* entered an agreement to arbitrate.  Here, it is undisputed, that Ms. Owen did.[22]  Further, on the issue of "waiver" of a right to arbitrate, *Van Ness* suggests that such may only be deemed to occur when a party answers a complaint, substantively moves to dismiss (rather than moves to compel arbitration), none of which occurred here.[23] Finally, the other cases that Ms. Owen relies upon, are ones in which litigants have substantively and unilaterally sought the rulings of a court (in bad faith), only to then abandon the court when things did not go their way, and seek an order of arbitration, well after litigation had been fully underway.  That bears no resemblance to the proceedings here.  All that exists for this court to rule upon at present are:

1.    Whether or not to order the parties to arbitration, or stay the case in favor of arbitration pursuant to the FAA;

2.    Whether to, instead, remand the case to state court and let the state court handle it;

---

[20] *See id.* at 221 (citing 9 U.S.C. §§ 2, 3, and 4) (other citations omitted) (Emphasis added).

[21] *See* ECF 19, at page 4; *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 756 (9th Cir., 1988)

[22] *See* ECF No. 9, Exhibit "A" *id.*, at 23

[23] *See Van Ness*, 862 F.2d at 756, 759.  *See also, Kelly v. Pub. Util. Dist. No. 2*, 552 Fed. Appx. 663, 664 (2014) (finding waiver when the party that later moved for arbitration had voluntarily conducted discovery, brought a preliminary injunction and a motion to dismiss on the merits).

3.      Whether to allow the HPL defendants to maintain the Operating Agreement and Licensing Agreement under seal.[24]

There are no pending substantive motions.  There has been no discovery order issued (nor should there be with a pending motion to compel arbitration).  There is absolutely no need for the HPL defendants did not file a motion to dismiss, allowing their motion to compel to serve as their responsive pleading to Plaintiff's complaint, as they are allowed.  The HPL defendants have a number of legitimate and significant potential counterclaims against the Plaintiff, but have not brought them in this suit, preferring to bring them instead in the arbitration that Adam Stokes and Christine Owen agreed to conduct at the time of their entering their contract 4 years ago. Moreover, the HPL defendants have not herein sought sanctions against Plaintiff for her continued abuses of the defendants by way of this litigation,[25] delaying the inevitable arbitration that either this court (and/or the state court will most likely order if remanded), as well as, this present unmeritorious motion, let alone her frivolous objections to the respectful and sincere request of the HPL defendants that the Operating and Licensing agreements be filed under seal, at least until the lawsuit is resolved and/or the matter is arbitrated.

Under the Arbitration Act, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract

---

[24] *See* ECF Nos. 6, 9, 14, 15, 18.  Plaintiff descries the HPL defendants having engaged in a "lengthy motion practice" (*see* ECF No. 19, at page 5), instead of moving more swiftly, (in a manner more in keeping with her view of the timing), to compel arbitration.  But a quick glance at the record would reveal that Plaintiff's purported view of the HPL defendants' litigation conduct in this action is entirely unfounded.

[25] One of the most egregious ways that Plaintiff has abused this litigation—aside from this inane motion for discovery—is publishing in her filing, the Operating Agreement between herself and Adam Stokes, which this court provisionally allowed to be **filed under seal**, and which the court has not ruled yet upon.  **Ms. Owen placed the entire Agreement in e-filing (ECF), flagrantly flouting the court's authority to decide whether or not it should remain under seal.  *See* ECF No. 21, Exhibit 2; *see also*, ECF No. 14 and 15.**

language itself or an allegation of waiver, delay, or a like defense to arbitrability."[26]  Pursuant to the rules of the Federal Arbitration Act, this case must be *stayed* pending arbitration, as fully set forth in the HPL defendants' motion to compel arbitration.[27]  There is a valid right to arbitration here, one that would allow Plaintiff to pursue her discovery goals.  Plaintiff is not entitled to file a lawsuit, forcing the HPL defendants to defend, and then lose all the bargain of their arbitration agreement by making them conduct discovery while a motion to compel arbitration (or to stay the action in favor of arbitration in accord with the FAA).  Engaging in court-ordered discovery is expensive and time-consuming—doing so would contravene the parties' decision to arbitrate.  Ms. Owen can agree to arbitration and undertake her requests for discovery with an arbitration panel or judge.  Or, she can wait until the court rules upon her multiple requests variously to, a) remand the case to state court, and/or, b) set aside her signed agreement to arbitrate in the Operating Agreement that she signed with Adam Stokes in 2014.

Finally, even if Ms. Owen is entitled to see certain documents in accord with NRS 86.241, it does not give her the right to compel it, outside of the discovery process, at this stage in the litigation.  It is included in the statute itself that "any demand by a member or manager is subject to reasonable standards."[28]  One of those "reasonable standards" for requesting the membership information that Plaintiff demands, pursuant to the aforementioned statute is, not surprisingly, subject to the parties' operating agreement:

> **5.    Any demand by a member or manager under [this section] is subject to such reasonable standards regarding at what time and location and at whose expense records are to be furnished as may be set forth in the articles of organization or in an operating agreement adopted or amended…[29]**

---

[26] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985) (citing *Moses H. Cone Memorial v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)).
[27] *See* ECF No. 18.
[28] *See* NRS 86.241(5).
[29] *See id.* (Emphasis added)

Here, the Plaintiff has initiated a litigation—and only after several months of not getting her way in the litigation, she suddenly has dire need of materials that directly involve and bear upon issues in this litigation. Sore with having to wait for this court's ruling on remanding the case to state court, or staying the case and sending the parties to arbitration, Plaintiff now tries to do an end-run by trying to engage in discovery (and further abuse of the defendants, at least the HPL defendants), by trying to compel them to disclose information that she neither needs, nor is entitled to at this time, in this way.

If Plaintiff is disgruntled with what she believes is a bad faith response to her request for information or materials—while this case is pending—she has a remedy: She can compel Adam Stokes and HPL to go to arbitration, where, if she is indeed entitled to this material, an arbitrator will order it. The scope of the arbitration agreement that Adam Stokes and Christine Owen entered, as discussed at length in the HPL defendants' motion to compel arbitration, is wide, plenary, and encompasses this very subject, as well. Ms. Owen can and should obtain any membership materials she needs and/or wants by way of arbitration. The HPL defendants would be willing to expedite any arbitration procedure and will unreservedly abide by any decision of the arbitrator or arbitration panel regarding Plaintiff's request for these materials. If Plaintiff does not want to abandon this litigation and/or go to arbitration while it is pending, then she can wait until this court allows discovery to receive these materials to which she is entitled, if at all.

With all due respect, Ms. Owen is trying to have her cake and eat it, too. And that, this honorable court should not lightly indulge.

If the court is inclined to allow Plaintiff to conduct discovery, even a limited version of such, the HPL defendants request the same privilege. Unilateral discovery—just on the part of Plaintiff—would be unjust. The HPL defendants (and perhaps, defendant Ramzy Ladah, as well) have compiled a list of items that they would like to mutually seek from Plaintiff, which will also advance their interests in the litigation, prior to arbitrating these claims. Indeed, the HPL defendants would ordinarily be eager to seek discovery from Ms. Owen and to seek resolution through a Motion for Summary Judgment, especially to seek a deposition of Ms. Owen, as well as obtain materials and information in support of their anticipated counterclaims (including her

breach of fiduciary duties to the company, HPL, and her direct competition with the same), but they will pursue these aims (or equivalent aims) in arbitration.  And in the meantime, they, the HPL defendants, will respectfully await this court's decision before taking any further action.

### 3.    CONCLUSION

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.,* and other aforementioned authorities, defendants Adam Stokes, Adam Stokes, LLC, Half Price Lawyers, LLC, and Mark Coburn (the "HPL defendants") respectfully renew their request that the court enter an order directing the plaintiff to submit her complaint, and the claims therein, to arbitration, and dismiss this action in its entirety.  Alternatively, the HPL defendants ask that the court stay any judicial proceedings pending the outcome of arbitration.

At the same time, the HPL defendants oppose any end-run attempts by the Plaintiff to engage in discovery, even before this court has made a decision on remand and arbitration. Plaintiff has not provided **any certification** of a meet and confer (nor could she, without sacrificing candor to the court), and for that reason alone, her motion should be denied.

Finally, if the court is inclined to grant Plaintiff's request for discovery, the HPL defendants respectfully request the reciprocal right of discovery.

DATED this 7th day of June, 2019.

LAW OFFICE OF TELIA U. WILLIAMS

By: _____/s/_____

Telia U. Williams, Esq.
*Attorneys for Mark Coburn, Half Price*
*Lawyers LLC, Adam Stokes,*
*and Adam Stokes, LLC*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>CERTIFICATE OF SERVICE</u>**

Pursuant to Fed. R. Civ. P. 5(b)(3) and Local Rule 5-4, the undersigned hereby certifies that on the following date the foregoing motion was electronically filed with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

Dated: June 7, 2019

/s/ David DaSilva
For the Law Office of Telia U. Williams

Exhibit 1

### AFFIDAVIT OF TELIA U. WILLIAMS

STATE OF NEVADA_____)
                                              )ss
COUNTY OF_CLARK     _____)

Affiant, Telia U. Williams, Esq., being first duly sworn deposes and truthfully says:

1.  I am the attorney of record in the case, *Christine Owen v. Adam Stokes, et. al,* 2:18-cv-01581-GMN-CWH, for the following defendants: Adam Stokes, Adam Stokes, LLC, Half Price Lawyers, LLC, and Mark Coburn (collectively, "the HPL defendants.")

2.  I make this affidavit on my personal knowledge, except for those matters that I believe to be true.

3.  I conducted an initial meet and confer, primarily on the issue of sealing the Operating and Licensing Agreements (on the request of my clients), with counsel for Ms. Owen on the telephone on or near November 19, 2018.

4.  Although most of the short conference concerned the issue of sealing, (or possible redaction), of the aforementioned documents, I also inquired as to Ms. Owen's intent to continue litigating, rather than arbitrating, the matter, and it was confirmed to me that Ms. Owen intended to continue litigation.

5.  I also asked for, and scheduled a meet and confer with counsel for Ms. Owen to further discuss the HPL defendants' request to discuss arbitration (and possible settlement). That conference was supposed to take place on Friday, December 21, 2018. Unfortunately, however, Ms. Owen's counsel was under the weather, had left the office early, and the meeting had to be rescheduled.

6.   The conference was then rescheduled for yesterday, December 27, 2018 at 1:00pm; however, when I telephoned Ms. Owen's counsel's office, I was told that he was "on the other line," and would return the call in a half hour or so.

7.  I waited for the call, but never received it.  I sent an email to Ms. Owen's counsel's to inquire about the conference, but as far as I can recall, received no response.

8.  On or near April 1, 2019, I wrote a letter to counsel for Ms. Owen to explain the reason that she was not entitled to discovery while this case is pending a motion to stay and/or compel arbitration.

9.  At the same time, as a courtesy, and because Ms. Owen might need it for her taxes, I forwarded to her counsel the Schedule K-1 for the company, Half Price Lawyers (also a defendant in this action, as aforementioned).

10. I heard nothing back from this letter that I wrote on April 1, 2019, and which is attached as an exhibit to our present Opposition to Ms. Owen's Motion to Compel [Discovery].

11. On or near May 10, 2019, I contacted Ms. Owen's counsel and spoke to his assistant, "Sonia," and requested that the parties meet for an informal settlement conference.  At that conference, I indicated, we could discuss any and all pending issues in the case, including my client's fervent desire to arbitrate, as well as discuss a possible offer to sell the business.

12. Sonia said that she would get back to me after she spoke to Ms. Owen's counsel, Harold Gewerter.  A couple days later Sonia told me that Mr. Gewerter had "tentatively" agreed to the meeting on behalf of his client, and we set a date of May 21, 2019, at 2pm, to take place at my client's office, Mark Coburn.

13. My paralegal, David DaSilva, sent an email to our clients, Adam Stokes and Mark Coburn, letting them know of the meeting, which email was disclosed in the present Opposition.

14. However, when I called to confirm the meeting the day before, on May 20, 2019, I spoke to Mr. Gewerter who told me flat-out that his client, Christine Owen, had "no intention of meeting," either in person, or on the phone.  Thus, we cancelled the meeting.

15. At no point did Mr. Gewerter ask me about the requested materials that his client had asked for, or that I had addressed in my letter to him on April 1, 2019.

16. At no point did Mr. Gewerter request a meet and confer with me on the issue of the materials to which Ms. Owen claims she is entitled (pursuant to NRS 86.241), prior to bringing this motion to compel.

FURTHER AFFIANT SAYETH NAUGHT.

Dated this 7th day of June, 2019.

By:_____/s/_____

Telia U. Williams, Esq.

# Exhibit 2

**telia@telialaw.com**

| | |
|---|---|
| **From:** | daviddasilva@telialaw.com |
| **Sent:** | Monday, May 13, 2019 9:55 AM |
| **To:** | 'Mark'; 'Adam Stokes' |
| **Cc:** | telia@telialaw.com |
| **Subject:** | Informal Settlement Meeting (Half Price Lawyers case |
| | |
| **Importance:** | High |

Dear Gentlemen:

We have a tentative date for an informal settlement conference with you and Christine Owen and her attorney for this case on May 21, at 2pm.  We told them that there is a possible offer to buy HPL.  **We were hoping to use Mr. Coburn's conference room** for the meeting since ours is in Summerlin and is not convenient for Mr. Gewerter (according to his assistant), and Mr. Gewerter's office conference room is apparently too small for us or unavailable.

Please confirm your availability asap.

Thank you.

David


**David DaSilva**
**Legal Assistant and Office Manager**
**Law Office of Telia U. Williams, Esq.**
**10161 Park Run Drive, Suite 150**
**Las Vegas, Nevada 89145**
**Tel:  (702) 835-6866**

*"Harvard-trained, Brooklyn-tough"*

**CONFIDENTIALITY NOTICE:  The information contained in this electronic message and any attachments to this message is privileged and confidential, and intended solely for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, copying, or unauthorized use of this communication is strictly prohibited.**

# Exhibit 3

**telia@telialaw.com**

| | |
|---|---|
| **From:** | daviddasilva@telialaw.com |
| **Sent:** | Monday, November 12, 2018 5:07 PM |
| **To:** | 'Harold Gewerter' |
| **Cc:** | telia@telialaw.com |
| **Subject:** | Owen v. HPL, et al |
| | |
| **Importance:** | High |

Hello Mr. Gewerter:

I am reaching out to set up the meet and confer on the sealing/unsealing of the Operating Agreement/Licensing Agreement in HPL, pursuant to the court order.

**Below are times that Ms. Williams is available in person:**

Wednesday, Nov. 14, before noon.

Thursday, Nov. 15, afternoon.

Friday, Nov. 16, afternoon.

**Below are times that Ms. Williams is available on the telephone (week of Thanksgiving):**

Monday-Friday (Nov. 19-Dec. 23): Just let me know when you are available. Ms. Williams is out of town, in a different time zone, but I will arrange for a call if you give me a range of times.

Hope you are having a good holiday.

David


**David DaSilva**
**Paralegal and Office Manager**
**Law Office of Telia U. Williams, Esq.**
**10161 Park Run Drive, Suite 150**
**Las Vegas, Nevada 89145**
**Tel: (702) 835-6866**

*"Harvard-trained, Brooklyn-tough"*

**CONFIDENTIALITY NOTICE: The information contained in this electronic message and any attachments to this message is privileged and confidential, and intended solely for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, copying, or unauthorized use of this communication is strictly prohibited.**

**If you have received this electronic message in error, please notify the sender and/or person whose signature is stated above immediately by telephone and delete or destroy any copy of this message.**

# Exhibit 4

# LAW OFFICE OF TELIA U. WILLIAMS

10161 PARK RUN DRIVE, SUITE 150, LAS VEGAS, NEVADA 89145 *702-835-6866 * WWW.TELIALAW.COM

**VIA ELECTRONIC AND UNITED STATES MAIL**

April 1, 2019

Harold P. Gewerter, Esq.
1212 S. Casino Center Blvd.
Las Vegas, Nevada 89104

Re:    Half-Priced Lawyers K-1 (Partner's Share of Income, Deductions, Credits, etc.)

Dear Mr. Gewerter:

I hope that this letter finds you well.

Enclosed please find a Schedule K-1 tax document that we have received from our client, Adam Stokes, regarding Half Price Lawyers (HPL), which is currently involved in litigation with your client, Christine Owen. Our understanding is that Ms. Owen has requested this document directly from Mr. Stokes.

At this time, considering that Ms. Owen has sued not only Mr. Stokes, but also HPL, it is in our estimation, not appropriate for Ms. Owen to directly communicate with Mr. Stokes about matters properly encompassed by the litigation she initiated. However well-intentioned she may be, or how legitimately she perceives a need for information, all of the parties would be better served if Ms. Owen would go through your office for this kind of information, instead of contacting my client directly. As you know, both parties are represented by counsel. Both parties are embroiled in sensitive litigation. Side communications between our *represented* clients, outside of the proper channels (i.e., by way of their respective counsel), *at best* can lead to redundancies, or information gaps with their attorneys, and *at worst*, can lead to ethical quandaries, miscommunications, and possible unfair advantage for one party over another party in the suit, exclusive of our clients, (including, but not necessarily limited to, for example, Ramzy Ladah). Such could have an adverse impact on the progress of the litigation itself. It simply is not prudent. Nothing in this assertion is meant to contravene any of the protocol established for the means that the parties interact with, and communicate, regarding their minor son. But when it involves anything concerning their "business," the proper protocol is, the represented parties should communicate by way of counsel.

Discovery has not officially commenced in this case, (nor even initial disclosures), and our position is that Ms. Owen is not entitled to this information or material from Mr. Stokes. Each quarterly check that Ms. Owen received in 2018 identified the portion of the year for which that quarterly distribution applies. We understand that she desires the assistance of this document in order to continue preparing her taxes, and withholding it, could cause her undue burden, even if not strictly necessary for her taxes. Therefore, within the latitude afforded by the Federal Rules, we are providing it. Note that

the electronic copy of the K-1 has been <u>redacted</u> to protect Ms. Owen's social security number. The hard copy version—arriving in U.S. mail to your office—will be an unredacted copy.

However, Ms. Owen's two other related requests of my client, made to him ex parte, must be declined. Inasmuch as you may not even be aware of what your client has requested of Mr. Stokes (because she did not take the step of going through counsel), I will briefly bullet-point them for your information:

- Ms. Owen requested access to the bank account records of HPL, and access to its online banking—again, a defendant in the lawsuit filed by her.

- Ms. Owen has requested revenue numbers for my client, Mark Coburn—another defendant in the lawsuit filed by her.

Ms. Owen is not entitled to access bank account records of HPL, or revenue numbers for Mr. Coburn, at this point. Certainly, assuming limits as to scope, it may be reasonable for Ms. Owen to request these records as part of a bona fide "Requests for Production." *See, e.g.,* Fed. R. Civ. P. 34; *see also,* Fed. R. Civ. P. 26. (We do not intend, by saying this, that we waive any relevant objections to any future discovery request.) Ms. Owen has never been entitled to online computer access to HPL's banking. Again, it is our position, she does not need this access in order to complete her taxes, nor to see her distributions. However, as I noted, discovery plainly has not begun in this matter. Ms. Owen has sued the defendants, and has not abided by the Operating Agreement which requires her to arbitrate. That changes things. *Ironically,* Ms. Owen bases her purported entitlement to this discovery on the *very* Operating Agreement that she completely ignores with respect to its provision that she *arbitrate all disputes.* Thus, although she had been graced with much information in the past, to which she was not entitled, it would not be in my clients' best interest to do so now. It would simply afford her an advantage to which she is not entitled in this litigation that she initiated—<u>and</u> where she has not indicated *any* interest in reciprocating.

Feel free to contact my office with any questions or concerns. Thank you for your prompt and professional attention and consideration in this matter.


Sincerely yours,

/s/
Telia U. Williams, Esq.
***"Harvard-trained, Brooklyn-tough"***

2

HA8821 02/05/2019 4:11 PM

**Partner# 2**

651113

| | Final K-1 | | Amended K-1 | | OMB No. 1545-0123 |

**Schedule K-1**
**(Form 1065)**

**2018**

Department of the Treasury
Internal Revenue Service

For calendar year 2018, or tax year

beginning _____ ending _____

**Partner's Share of Income, Deductions, Credits, etc.** ➦ See back of form and separate instructions.

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) | 15 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | | |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 6c | Dividend equivalents | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| 9a | Net long-term capital gain (loss) | | |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | 18 | Tax-exempt income and nondeductible expenses |
| 10 | Net section 1231 gain (loss) | | |
| 11 | Other income (loss) | | |
| | | 19 | Distributions |
| | | A | |
| 12 | Section 179 deduction | 20 | Other information |
| 13 | Other deductions | Z | |
| | | AH* | STMT |
| 14 | Self-employment earnings (loss) | | |

| Part I | Information About the Partnership |
|---|---|

A  Partnership's employer identification number

B  Partnership's name, address, city, state, and ZIP code

**Half Price Lawyers, LLC**

C  IRS Center where partnership filed return
e-file

D  ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |
|---|---|

E  Partner's identifying number

F  Partner's name, address, city, state, and ZIP code
**Christine Owen**

G  ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

H  ☒ Domestic partner   ☐ Foreign partner

I1  What type of entity is this partner?   **Individual**

I2  If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

J  Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 25.000000 % | 20.000000 % |
| Loss | 25.000000 % | 20.000000 % |
| Capital | 25.000000 % | 20.000000 % |

K  Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ | $ |
| Qualified nonrecourse financing | $ | $ |
| Recourse | $ | $ |

L  Partner's capital account analysis:

Beginning capital account ......... $
Capital contributed during the year ......... $
Current year increase (decrease) ......... $
Withdrawals & distributions ......... $ ( )
Ending capital account ......... $

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

M  Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.
DAA

www.irs.gov/Form1065

Schedule K-1 (Form 1065) 2018



This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040.
For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

HA6821 Half Price Lawyers, LLC

**Federal Statements**
**Christine Owen**

2/5/2019 4:11 PM

FYE: 12/31/2018

### Schedule K-1, Line 20AH - Additional Supplemental Information

Description

Distribution in Excess of Partner Basis

HA5821 02/05/2019 4:11 PM

**Partner# 2**

| Schedule **K-1** | **Analysis of Partner's K-1, Current Year Increase (Decrease) Worksheet** | **2018** |
|---|---|---|
| | For calendar year 2018, or tax year beginning _____, and ending _____ | |

| Partnership Name | Employer Identification Number |
|---|---|
| Half Price Lawyers, LLC | |

| Partner's Name | Taxpayer Identification Number |
|---|---|
| Christine Owen | |

Items Included in Current Year Increase (Decrease):

**Schedule K Additions:**
 **Ordinary Income/Loss**

Subtotal

**Total per Schedule K-1, Current Year Increase (Decrease)**

Page 1 of 1



HA8821 02/05/2019 4:11 PM

| Schedule **K-1** | **Partner's Section 199A Information Worksheet** | **2018** |
|---|---|---|
| | For calendar year 2018 or tax year beginning _____ , ending _____ | |

| Partnership Name | Employer Identification Number |
|---|---|
| Half Price ▓▓▓▓ LLC | ▓▓▓▓ |
| Partner's Name | Taxpayer Identification Number |
| Christine Owen | |

| | Activity Description | SSN/EIN | SSTB | PTP |
|---|---|---|---|---|
| Column A | Half Price Lawyers | | X | |
| Column B | | | | |
| Column C | | | | |
| Column D | | | | |

| | Column A | Column B | Column C | Column D | Column E Totals |
|---|---|---|---|---|---|
| Ordinary business income (loss) | ▓▓,▓▓▓ | | | | |
| Net rental real estate income (loss) | | | ▓▓▓▓ | | |
| Other net rental income (loss) | | | | | |
| Royalties | | | | | |
| Other income (loss) | | | | | |
| ▓▓▓▓ ctions | | | | | |
| Total qualified income | ▓▓,▓▓▓ | | | | |
| **Qualified Business Income** | ▓▓,▓▓▓ | | | | ▓▓,▓▓▓ |
| **Qualified PTP income** | | | | | |
| Qualified W-2 wages | | | | | |
| Qualified property | | | | | |
| Qualified REIT dividends | | | | | |
| Portion of QBI allocable payments received from co-op | | | | | |
| W-2 wages allocable to qualified payments | | | | | |
| Co-op's QPAI deduction allocated to patron and identified by co-op | | | | | |



**Page 1 of 1**

HA6821 02/05/2019 4:11 PM

**Partner# 2**

| Schedule **K-1** | **Partner's Basis Worksheet, Page 1** | **2018** |
|---|---|---|
| | For calendar year 2018, or tax year beginning          , and ending | |

| Partnership Name | Employer Identification Number |
|---|---|
| **Half Price Lawyers, LLC** | 46-2696~~~~ |
| Partner's Name | Taxpayer Identification Number |
| **Christine Owen** | |

**Beginning of year** .......................................................................................... 996

**Increases:**

| | | | | |
|---|---|---|---|---|
| Capital contributions: | Cash | | Property (adjusted basis) | |
| "Excess" depletion | | | | |
| Income ~~~~~~~~ | ~~~~~~~~ income | | | 21,849 |
| | Net income from rental real estate activities | | | |
| | Net income from other rental activities | | | |
| | Interest | | | |
| | Dividends | | | |
| | Royalties | | | |
| | Net short-term capital gain | | | |
| | Net long-term capital gain | | | |
| | Other portfolio income | | | |
| | Net gain under section 1231 | | | |
| | Other income | | | |
| | Tax-exempt interest and other income | | | 21,849 |
| Other increases: | Transfer of capital | | | |
| | Gain on disposition of section 179 assets | | ~~~~~~~~ | |
| | Other increases | | | |
| Distributions: | Cash | ~~~~~~~~ | Property (adjusted basis) | 27,297 |
| Increase (decrease) in share of partnership liabilities | P/Y | | C/Y | |

**Subtotal** ........................................................................................................ ~~~~~~~~

Distribution in excess of partner basis

**Decreases:**

| | | | | |
|---|---|---|---|---|
| ~~Nonesp items~~ | Nondeductible expenses | | ~~~~~~~~ | |
| | Charitable contributions | | | |
| | Foreign taxes | | | |
| Loss items: | Ordinary loss | | | |
| | Net loss from rental real estate activities | | | |
| | Net loss from other rental activities | | | |
| | Royalties | | | |
| | Net short-term capital loss | | | |
| | Net long-term capital loss | | | |
| | Other portfolio loss | | | |
| | Net loss under section 1231 | | | |
| | Other losses | | | |
| | Section 179 expense | | | |
| | Deductions related to portfolio income | | | |
| | Other deductions | | | |
| | Interest expense on investment debts | | | |
| | Section 59(e)(2) expenditures | | | |
| | Loss on disposition of section 179 assets | | | |
| Depletion | | | | |
| Other decreases | | | | |

**End of year** .................................................................................................. ~~~~~~~~

Note to partner: This worksheet was prepared based on partnership records. Please consult with your tax advisor for adjustments.

# Exhibit 5

**daviddasilva@telialaw.com**

| | |
|---|---|
| **From:** | telia@telialaw.com |
| **Sent:** | Thursday, December 27, 2018 7:27 PM |
| **To:** | 'Harold Gewerter' |
| **Cc:** | daviddasilva@telialaw.com |
| **Subject:** | Our call to meet and confer |

Dear Mr. Gewerter,

I hope you are okay? When we called in for our call to meet and confer at 1pm today, we were told by your assistant that you were "on another call," and would call us back in a half hour.  But we did not receive a call, and we waited the rest of the day for it.

Sincerely,

Telia U. Williams, Esq.
Law Office of Telia U. Williams, Esq.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel:  (702) 835-6866
Fax: (702) 363-8851

"Harvard-trained, Brooklyn-tough"

CONFIDENTIALITY NOTICE:  The information contained in this electronic message and any attachments to this message is privileged and confidential, and intended solely for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, copying, or unauthorized use of this communication is strictly prohibited.

If you have received this electronic message in error, please notify the sender and/or person whose signature is stated above immediately by telephone and delete or destroy any copy of this message.